case number 20131176. Mr. Kenney, you want five minutes for rebuttal? Yes, please. May it please the Court, the error by the trial court here is that the trial court is equating Customs' decision that entries of a good do not meet the specific factual of the ruling itself. And that error led the Court to erroneously conclude that both the notice of action was an interpretive ruling or decision within the meaning of 19 U.S.C. 1625. Mr. Kenney, has Customs ever, the ICP claims Customs never even identified or investigated the principal use of the class and kind of goods to which ICP's white sauce belonged. Page 15 of the brief. Has Customs ever investigated the principal use? At the time of these issues, Customs investigated and the joint appendix shows that there's a lot of documents that go into Customs finding out how the customer, the main customer of ICP used the product. What's the principal use? That's not the same. Principal use, well, principal, actual use is a factor in principal use according to the IRRM decision. Have they ever investigated the principal use? There was no... You know that's Customs terminology. Yes, Your Honor. There was an investigation going on and they were determining, they found out that the good was no longer typically used as pursuant to the specification sheet that they got, yet the investigation showed that it was actually used in a different manner and that actually... It was being used to make cheese according to the government. Exactly. That's not a principal use investigation. Was there a principal use investigation of white sauce? There were factors involved in determining principal use. The answer is probably no, right? Was there a specific... I think it's a pretty easy question. Was there a specific principal use investigation? Yes. There were factors that went into it. There wasn't necessarily a principal use investigation or factors into it. When Customs undertakes an advanced ruling, I mean, they have to take a look at principal use. Customs isn't making any... This is the misconception of the trial court, is that there was no ruling... I mean, that's one of the main elements of a tariff classification. You're talking about the original ruling? Correct. The original ruling, Customs takes what is presented to Customs on face value. Did they make a principal use ruling or not? According to the NIS who actually drafted this, he took the specification sheet which stated the typical usage and he took that at face value. Counselor, in your view... I mean, it's a yes or no question and it requires a yes or no answer. Did the original advanced ruling, the investigation that was done then, establish the principal use of the white sauce? The investigation or what went into the ruling done for the original ruling by the NIS, he took the presentation of the information at face value and he decided to... So your answer was there was no investigation but there was a ruling? No, that was a testimony that was in the lower court. Answer me. Your answer is there was no investigation but there was a ruling? There was a ruling and it was based upon what was presented. There was no necessary investigation. My next question is that had Customs ever in the past used a notice of action to apply that notice of action ruling to all shipments forward looking and backward looking? The notice of action is not a ruling. The notice of action... I know what you say a notice of action is but you applied it here in a way that covered all shipments including the past shipments as well as all future shipments. So you may not say it's a ruling but have you ever used a notice of action in that way before? It's likely that Customs has had similar wording in other notices of action but the notice of action is different because a notice of action is from one importer, not nationwide. Again, I have a question. The answer is you don't know. I don't know specifically. I don't disagree that there's probably similar wording in other notices of action. I don't have those specifically before me. I'm correct that government concedes that the imported product was not materially different from the product in the ruling letter. That was the outcome of the trial. We're not disputing the factual... So you do concede it? After the trial, yes. Before the trial, there was a belief that it was different. By about a half percent of butter fat? No, Your Honor. I mean, there were other things too. There were things like the ruling or the information was that this was coming from Israel. The actual goods were coming from New Zealand. But it was the typical use that was discovered in the investigation that was the main focus of why the material was different from the ruling request and customs belief. Now, there was a trial on that and that difference was decided that that was not a material difference. We're not disputing that. But customs in issuing a notice of action was saying that the good at that time did not meet the specific facts of the ruling. Not that the ruling is invalid. Past and future. How is that not a revocation? Because a revocation is specifically done through 1625 and it has to go through the stringent process of 17712. So it's not a proper revocation, you'd say. First, the notice of action is not an interpretive ruling or decision under 1625A. And secondly, it doesn't meet any of this. Notice of actions are not items that are published. It doesn't meet the publication requirement. But isn't the problem here that you actually gave the notice of action the effect of a revocation regardless of what you called it? If there is, under 1625, there's no effective revocation. There are things that do revoke a ruling and those are other interpretive decisions. 1625C and A are used, the wording is similar as to what kind of decision. But in this case, if we take your position to its logical extreme, you never would have had to undertake a 1625 analysis because your notice of revocation covered everything. No, Your Honor. The notice of action was because customers felt the good was different. Now, if the plaintiff or ICP... Does the notice of action cover all future shipments? The notice of action advised this specific importer to classify it... Yes, it will cover all future and prior shipments. Yes, this specific importer advised... The Port of Philadelphia advised this specific importer that future classification should be under 0405. That's correct. But you argue a notice of action only relates to one import, one act. And yet, you gave it this broader effect. The notice of action issued by a port does not have... It's not a document that has a broad effect because it applies to one importer. 1625 is supposed to... It's a statute that is supposed to provide transparency in the ruling and policy directives of customs. At the national level, we're talking about what those documents are. Are rulings, ruling letters, process reviews decisions... So you can always use a notice of action to negate the ruling letter obtained by a particular importer and say, yeah, but that ruling letter is still out there. It just doesn't apply to this person who sought it anymore. Well, customs is not in the business of skirting a ruling that's out there. Customs would still have that ruling out there. And that ruling is binding and could be used by other importers also if it meets similar factual situations. The proper cause of action, the way to it, if that is what happens to an importer, the proper cause of action is a 1779 saying, you know, I have a binding ruling, I disagree with customs, and I think that this import meets this ruling, and therefore... Did the importer have actual recourse under 1779 given the retroactive scope of the notice of appeal? The government says in its reply brief, the government says, an importer who disagrees with the manner in which its entries have been liquidated always has recourse via the administrative protest procedures under 1779 to seek a different result, but not under 1625. Did it have actual recourse under 177.9 given the retroactive scope of the notice of appeal? And if so, is the remedy for a breach of 177.9 the same as a remedy for a breach of 1625? Your Honor, yes, because everything would have had to have been liquidated. A notice of action is a precursor. It's telling the importer that there's going to be a rate advance at the upcoming liquidation. That's why it's something that advises the importer of this. So at the liquidation, if the importer disagrees with how that's liquidated, if the importer thinks that, you know what, this liquidation of this good should have been under my ruling that I had, he or she can protest that and cite 1779. In your brief, you say that ICP intentionally didn't want to allege a violation of 1779 and insisted on going under 1625. Where is that in the record that they intentionally did not wish to? I mean, you say you kept telling them. Your Honor, the Joint Appendix, we show that we've notified, we've raised the point that ICP should allege, they didn't allege a proper cause of action. They should allege a proper cause of action under 177.9. The complaint never changed. Okay. Usually what we're talking about is a situation where someone gets a ruling and they can bring in goods with, you know, seven buttons on them. And one of the shipments comes in and it only has six or it has eight. And then customs can do a notice of action and say, this one is not going to be liquidated like a seven-button product. And in that case, there's one issue, one shipment, one misshipment, and they have the 1779 procedure. What you're saying is now what you did was you said, you're going to bring in seven buttons. They shipped seven buttons. And you say, you know what? We don't think seven buttons really is seven buttons. And so every single shipment you're going to have to now object on a one shipment per basis. They would have to file this procedure every single time they brought anything in, right? That's not necessarily so because once a protest is commenced, other entries can await the decision on that protest. So if the importer brings that up. But they'd be at risk for every one of those. Once the decision, if customs agrees with that decision in the protest, if customs says, you know what? We made a mistake. We didn't understand. And they grant that protest, it's likely that's going to be resolved. If they don't get a determination to their liking, they could then bring that to the CIT as long as they pay the duties, bring it to the CIT. That decision from the CIT will then affect how customs. If you think this is so clear cut, then why did you bother to start the 1625 proceeding? The timing, if you look at the timing of the 1625 proceedings, the notice of action was in April of 05. There were a few liquidations prior to ICP bringing suit under H, which the trial court changed to respond to I, and decided that case in June of 05, saying that those material under I, and also saying that those things that you said were different from what the ruling was, they're not different. So that was the trial court's decision. That was issued in June. Customs was left at that point saying that we're rethinking this. The trial court has said that those material things are not material things. We believe that they are, but that's what the trial court said. We're having a view change on what this is, and we're going to start the ratification process in August of 05. And then that's done by October of 05. So there's a change of circumstance. I think Judge O'Malley got it right. And let me take it a different direction. Do you concede that the goods that were entered, the goods in question, conformed with the advance ruling? That's not a dispute anymore, is it? We're not disputing. We're not disputing now. We're not disputing that now. Answer no question. Do you concede that the entry of the goods conformed with the advance ruling? Because we're not appealing it, yes. We have to agree we're not appealing the factual. So if they conform with the advance ruling, then doesn't the advance ruling apply in the hierarchy of things? And you have a notice of action. You're saying that the notice of action, and Judge O'Malley is pointing out that your notice of action has a prospective and retrospective application, but yet you have an advance ruling here that has been formally published in the Customs Bulletin under the APA. So now you have an advance ruling that's in conflict. Your Honor, Customs, when these goods were rated advanced, Customs didn't believe that the goods matched the factual circumstances. Now that you do believe it, and you concede, why are you pursuing this action? Unless you want to tell us that a notice of action has priority and more formal effect under Customs law than an advance ruling. The reason that we're appealing this is because it's specifically related to the cause of action here, the 1625C cause of action, and how the trial court found that the notice of action equated with an interpretative ruling or decision. That has a vast detrimental effect to Customs and the way they operate. Your concern is when they do a notice of action correctly that somehow this is going to impact. If you do it correctly, it shouldn't matter. Our concern is that now that a notice of action is deemed to be a ruling or decision, all those things have to be published now. This is ubiquitous in the Customs. I would agree with that if the notice of action contradicts and reverses an advance ruling. And that's the issue here, isn't it? All the trial court said was that in the facts and circumstances of this case, you can call it a notice of action, but that's not how it operated here. In most instances, as I understand it, notices of action don't purport to do this. Well, it's similar to... There's a case called Canex in the CIT, where, once again, Customs found a product that, in their mind, didn't fit a ruling. There was a product. It was close, but it didn't fit a ruling. So they rate-advanced what was brought in by the importer under a different tariff regime. And eventually, that case gets to the CIT, and their argument was, in Canex, plaintiff's argument was that this notice of action was contrary to a ruling. The court found that in the CIT, the court found that it didn't meet... The imports did not meet that ruling, and that ruling was inapplicable. Customs was right. We're not... This is a similar situation. Customs, at the time of this notice of action, didn't believe the goods met the ruling, and, therefore, the plaintiff could get relief through a protest through 1779, and, if they didn't like the decision, to bring it to the court and work that out. But there was no decision to revoke that ruling because the ruling was good for the circumstances in which were in that ruling, the limited circumstances. Okay. You've used up more than your time. We'll give you two minutes on rebuttal. Restore that. If your opponent needs another two minutes, we'll give him that, but... Thank you. Okay. May it please the Court? I am Greg Tufel. I'm representing the FLE, International Custom Products, or ICT. I urge this Court to affirm Judge Carmen's decision in the Court of International Trade in its entirety. This is a tragic case. Because of customs' failure to understand and correctly apply its own rules, they persecuted an innocent and honest importer and put him out of business. They did an end run around Section 1625, and they issued a notice of action that eviscerated a valid and binding ruling and then went on to retroactively impose hundreds of millions of dollars in back duties on ICP. I think the strongest argument that your friend on the other side makes is that if we adopt a broad rule that says notices of action are to be treated as if they were revocations under 1625, doesn't that open the door that every time a customs official wants to say this product doesn't comply, that they would have to go through some broad process? I don't think it does, Your Honor. I think when they sincerely try to use a notice of action to do what the regulation provides, what 152.2 provides, they're not going to run into any problems. And the regulation, 19 CFR 152.2, if the Port Director believes the entered rate or value of merchandise is too low or if he finds the quantity imported exceeds the entered quantity, the estimated aggregate exceeds 15, he shall promptly notify the importer. Under those kinds of circumstances where they have a legitimate belief that the quantity is not as stated by the importer or the product is different than the ruling physically, they can still state in a notice of action they're not going to come anywhere near a 1625 problem. They're not going to have to worry about publishing in advance or anything like that. Where here were their own lab reports indicated goods are as stated by the importer. They had not a single physical difference between ICP's entries and the ruling, the description of the product in the ruling. It had nothing to do with why they sent the notice of action. They instead had this misguided notion that mere use by ICP's customers inconsistent with the principle use, an atypical use by ICP's customers, allows them to disregard a ruling and issue a notice of action saying your goods don't meet the ruling. Because they had no physical difference in mind at the time, their own lab reports confirmed that it was the same product, their notice of action was in effect that even though we're not noting any differences in the actual product and ruling, you just can't follow that ruling. And so, Mr. Tufo? Yes. What's your remedy here? I mean, I see what the court did for you, but that's it? Well, I mean, we asked for a declaratory relief that the notice of action be declared null and void. I mean, it's awfully late, like seven, eight, nine years later, but at the time, that notice of action created a dramatic upheaval in ICP's business, could no longer rely on the ruling, could no longer continue to import, so we wanted that remedy. We wanted it passed. We didn't get it passed. Your client was on the hook for $106 million in back duties. Actually, close to $300 million. $300 million. It's not in the record, but it wound up being that. And, yeah, it was dramatic and traumatic. And what the government forced us to do in ICP-1 and this court rule, this nope, nope, can't just jump to 1581-I and immediately challenge the notice of action. First, you have to go through a protest process on one of your entries. Thank goodness there was one cheap enough to afford. Certainly ICP couldn't afford to protest all $300 million worth. And then get the protest denied. Meanwhile, all the other entries, they proceed to take collection actions against the bonding company, et cetera. There was no real relief here. It's kind of almost too late, but at the bare minimum, refund the money that we overpaid on this one entry and uphold and please the trial court's finding that this was improper under 1625 and we're not going to turn a blind eye just because it says notice of action at the top of the form and it's a CF-29. I mean, that's elevating form over substance. What they did here was absolutely eviscerate the ruling. But for the rest of it, your client's out of business with no remedy. Yeah, I mean, the government has sovereign immunity. They can run around to all your customers accusing you of fraud and put you out of business and there's nothing you can do for it. And that was partially because this court decided that you couldn't fast-track here. It was too late by the time, yeah. We were forced into a jurisdictional hole that did not allow for faster relief. And it's unfortunate. Well, honestly, I think I wish that I were available, that 1581I were available to importers to immediately say, hey, look, you're putting me out of business here. It's not adequate to go through the protest procedure. I think this case proves it wasn't adequate, but it is what it is, and here we are. But bare minimum, please uphold the trial court's ruling that finally vindicated that he didn't lie, he didn't do anything wrong, they're the ones that got confused and wrongly applied the law and persecuted him for nothing and put him out of business for no good reason. It would be terrible injustice to reverse that holding at this point. One last question for me, anyway. Is it the case, from your perspective, that the entries in question conformed with the advance ruling? Absolutely. And that the government has conceded that along the way by not appealing that? Yeah, I mean, at this point, they're not appealing those factual findings, and they were absolutely correct. It wasn't like the butterfat content was within the 2% margin, but it was, in fact, about a half percent? Actually, the trial court found that the average was 76.85% or so, which is actually below the 77% range stated in the ruling request. So, I mean, you know, there was no real issue, in my opinion, below to be litigated there, but they insisted, you know. I think the government realized, I think, once the litigation began, that they couldn't really support this concept that, well, because ICP's customers used it differently, therefore there's a material difference. They figured out that doesn't work, so they were desperate to try and find another justification for putting them out of business and shutting down this plant, and they couldn't find one. Well, I, for my own perspective, I think these are the type of cases that do fall under 1581I. David, we should revisit that question. We can't do that with this panel or on this appeal, but, okay. Any other questions? Thank you, Your Honor. You don't have to talk about 1581I. Thank you, Your Honor. ICP could get released, the release that it sought, if it commenced an action stating that they have a valid ruling and that customers didn't apply that ruling pursuant to, they could protest that, raise 1779. They'd have to pay, though, all the duties, right? As they did in this case, they could take an entry, pay an entry. But they couldn't afford to pay all the entries. That's the problem. They could pay one entry, have other entries suspended there under if they get an agreement or not. But Customs wasn't agreed to anything. But, I mean, as he points out, you took them through a lot of procedural hoops and gave them very little possible remedy and they couldn't afford this, what you consider to be a very easy remedy. Congress created the manner of jurisdiction, 1581A, 1581I. 1581A is the preferable route to the CIT and that's based on a denied protest at the administrative level. If you can show that the remedy there would be manifestly inadequate, then you could get I and you could get there without going through the administrative processes. That case was decided by this court and it stated that 1581A provided a remedy and that, therefore, A was the proper way to go. When we get to A here... And they did do that. They did file a protest. They did pay the duties on... They did exactly what you're saying. Yes. And when they get here, the cause of action isn't that we didn't apply the ruling to their good. It's that Customs revoked the ruling with a notice of action under 1625. That's the error. The error is that 1625, a notice of action cannot revoke a ruling. A ruling is a headquarters-level, nationwide applicable document. I'd agree with you, Mr. Kinney. It can't. It's just that it did. It may have felt that way, but that feeling is the feeling that you should go to court and plead your 1779 that you didn't apply it. That's the cause of action, not to create a cause of action that the law does not support, in that only certain type of interpretive rulings and decisions can revoke another ruling or decision. I think your argument would be stronger if you hadn't conceded that the goods ultimately conformed with the advance ruling. When all this happened for no reason. That was the... When I say that we concede that, we're not disputing the trial court's decision on that aspect in the lower court. We felt that it was different. Customs had that belief all along. But we're not going to... The Department of Justice does not appeal a specific case's factual error. They appeal broad policy things. And the policy issue here is that a notice of action... The court said the notice of action is an interpretive ruling or decision that could revoke a ruling. That's what's appealed. That's what the policy of the Department of Justice is to appeal, not to appeal a specific factual error. But that belief about that factual, that material difference, was there by customs. Now, if the trial court felt in their decision that customs was mistaken in that, that's what makes a 1779 case. That's what makes a plaintiff win under a 1779 case. And that's the difference between a case like CanEx at the CIT, where the government actually won that case. It wasn't determined that it was a 1625 issue. It was determined that those goods did not fall within that ruling. So they're not applicable to that ruling. I think your time is up. Thank you. I would ask that the judgment below be reversed on this issue involving 1625. Thank you. I was hoping to hear you criticize the precision and specialty No, Your Honor. I recognize that you are the expert in that. Thank you.